359 So.2d 315 (1978)
Rhonda Marie WILSON et al.
v.
N. W. MAGEE et al.
No. 9152.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
Rehearing Denied June 13, 1978.
*316 Daniel E. Becnel, Jr., Reserve, for plaintiff-appellee.
Bruce J. Borrello, Metairie, for defendants-appellants.
Before GULOTTA, BEER, and GARSAUD, JJ.
GARSAUD, Judge.
The sole question presented by this appeal is one of quantum. Plaintiff sustained certain injuries when a crane was knocked off the flat-bed of a truck she was following and fell on top of her car. In the ensuing lawsuit against B & G Crane Services and Liberty Mutual, a jury awarded plaintiff $50,000 for "past, present or future pain, suffering, mental anguish, permanent disfigurement and future disability," $12,500 for past, present and future medical expenses, $12,500 for past, present and future loss of wages, for a total of $75,000. Defendant limits this appeal to the simple question of the abuse of the jury's discretion in making such an award under the circumstances of the case.
As a result of the accident, plaintiff sustained a blow to the head and injuries to her neck, back and right knee. In addition she sustained numerous small cuts and lacerations from the shattered glass. The evidence is clear that Ms. Wilson was noticeably shaken by the accident and remained very nervous and distraught for a good while. She was treated at the Ochsner Foundation Hospital Emergency Room for severe muscle strains. She returned three days later complaining still of the muscle strain, contusions, and increased pain in her right knee. Subsequently she was seen by Dr. Raul G. Reyes, who recommended hospitalization to treat plaintiff with "massage, diathermy, and steam baths twice daily" for her injuries. She received these treatments for approximately two weeks while hospitalized in Sara Mayo Hospital and was discharged on July 13, 1976.
A few weeks later Ms. Wilson consulted Dr. Kenneth Vogel, complaining of headaches. Dr. Vogel could find no neurological abnormalities and the results of an EEG were within normal limits. He recommended continued conservative treatment of her right knee by Dr. Reyes.
Due to continuing problems of dislocation of her knee, plaintiff consulted Dr. Stuart Phillips in October 1976. After X-rays, Dr. Phillips diagnosed a fracture of the patella for which surgery was performed on November 2, 1976. Her postoperative recovery was uneventful, being referred to on four occasions as "excellent" or "magnificent." However, she wore a leg cast for about six weeks, was given an exercise schedule for rehabilitation, and still suffers a slight limp. Dr. Phillips estimated approximately 10 percent residual disability of the knee, which Dr. Reyes considered to be a fairly good result for an operation of this kind. Plaintiff also called to the court's attention that she had become pregnant in the latter part of 1976 and as soon as she was aware of the pregnancy, in early 1977, she ceased taking all pain medication.
This case presents again the continuing conflict between our constitutional mandate to review facts and law, and the much discretion rule of Louisiana Civil Code Article 1934(3), which judicial sparring was *317 exhaustively covered in Geisler v. Louisiana Power & Light, 346 So.2d 339 (La.App. 4th Cir. 1977), writ denied, La., 349 So.2d 879. As the court concluded in that decision, the only course open is a review of the record to determine if it can possibly support the judgment. We do not believe that a judgment of $50,000 for a ten-percent permanent disability of the knee, with the attendant surgery and hospitalization, including an excellent recuperative period, can be justified. We believe that under the rationale of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) a figure of $20,000 for general damages is appropriate, particularly considering the acute mental distress surrounding the very accident itself.
With regard to the $12,500 award for past, present and future medical expenses, it was stipulated that plaintiff's previously incurred medical expenses up to the date of trial were $6,126.98. There is no evidence to indicate that any substantial future medical expenses will be incurred. Dr. Phillips' report indicated that plaintiff was recovering magnificently, and made no suggestion that any further treatment would be necessary after a final followup examination in May 1977. No other doctors, nor plaintiff herself, offered any testimony to show that any future medical expenses were likely. Future medical expenses, like any other element of damages, must be established with some degree of certainty.
"Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost." Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir. 1970).
No such showing was made and the award for medical expenses should be reduced accordingly, to grant $6,126.98 for the past expenses.
Similarly, the $12,500 award for past, present and future loss of wages appears to be unsupported by the evidence. Plaintiff was unemployed at the time of the accident and has not worked since, although there was no medical evidence to show that she was unable to work. To the contrary, Dr. Phillips' report of February 8, 1977 states that "will let her return to work and will see her back in 6 months." She had last been employed as a substitute teacher, at a rate of $15.00 per day, but she had stopped working at the end of the school term, which was prior to the accident. She also testified that she had planned to attend Delgado College to study inhalation therapy; however, although the accident may have prevented this temporarily, there was no indication that plaintiff was unable to pursue this course of study and career at the time of trial, nor was there any evidence to show what income plaintiff might have realized from a career in inhalation therapy.
In order to recover for loss of future earnings or earning capacity, one must show with some degree of precision what he or she would have earned if it were not for the accident.
"To support an award for this type of damages plaintiff must prove his loss with reasonable certainty. Speculation, probabilities, and conjecture cannot form the basis for the award. Heard v. Sanders, 223 So.2d 212 (La.App. 2d Cir. 1969); Burrows v. Louisiana Department of Highways, 319 So.2d 867 (La.App. 3rd Cir. 1975)." Watson v. Hartford Accident & Indemnity Co., 339 So.2d 480, 482 (La. App. 2d Cir. 1976), writ refused, La., 341 So.2d 1124 (1977).
Accordingly, the jury's award of $12,500 for loss of earnings must be set aside.
It should be noted, however, that as a result of the accident plaintiff did lose her unemployment benefits because she was no longer "ready, willing, and able" to work at the time. For this loss plaintiff should be entitled to some compensation for her actual loss until she was once more able to work. The medical evidence sets this date as February 8, 1977. Thus, this portion of the case must be remanded to determine the amount of unemployment compensation lost by plaintiff between the date of the accident and February 8, 1977.
*318 The judgment accordingly is hereby reversed, and recast as follows: general damages reduced from $50,000 to $20,000; medical expenses reduced from $12,500 to $6,126.98; loss of unemployment compensation benefits to be determined on remand consistent with this opinion.
REVERSED IN PART AND RENDERED; REVERSED IN PART AND REMANDED.